CHRISTOPHER JOSEPH DESALVA (SBN 172209)
LAW OFFICE OF CHRISTOPHER JOSEPH DESALVA
45-902 Oasis Street, Suite D
Indio, CA 92201
Telephone: (760) 447-0031
Email: desalvalaw@gmail.com

Attorney for Petitioner
KATHIA BELEN RUGAMA PEREZ

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA — EASTERN DIVISION**

| | |
|---|---|
| KATHIA BELEN RUGAMA PEREZ (A# 240-770-478),<br><br>Petitioner,<br><br>v.<br><br>FERETI SEMAIA, Warden (or Facility Administrator), Adelanto ICE Processing Center; JAIME RIOS, Field Office Director, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement, Los Angeles Field Office; DAVID VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; and TODD BLANCHE, Attorney General of the United States,<br><br>Respondents. | Case No. ______________________<br><br>**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; REQUEST FOR ORDER TO SHOW CAUSE WITHIN THREE (3) DAYS; DECLARATORY RELIEF**<br><br>**IMMEDIATE RELEASE REQUESTED**<br><br>**EMERGENCY** |

## I. INTRODUCTION

1. Petitioner KATHIA BELEN RUGAMA PEREZ (A# 240-770-478) has been imprisoned by U.S. Immigration and Customs Enforcement ("ICE") for three hundred twenty-four (324) days — since October 15, 2025 — on the strength of an "arrest" that the State of California has certified in writing never happened. She is a thirty-five-year-old citizen of Nicaragua, inspected and lawfully paroled into the United States at a port of entry. She is married to a United States citizen. She holds federal employment authorization valid through 2029, a California identification card, and a Social Security number. She worked as a certified nursing assistant. She has never been convicted of any crime, and no criminal charge has ever been filed against her. She reported to every immigration appointment she was ever given — including the appointment at which she was arrested.

2. On May 16, 2022, the United States Border Patrol encountered Petitioner at or near Hidalgo, Texas. She was inspected, processed, and — in the government's own words on its own form — "paroled" into the United States under INA § 212(d)(5), 8 U.S.C. § 1182(d)(5), and released on an Order of Recognizance, Form I-220A, with instructions to report to ICE Enforcement and Removal Operations. (Ex. A.) She did. On July 1, 2022, she reported to the ICE Alternatives to Detention office, and ICE itself de-escalated her case to non-detained. (Ex. B.) For three and a half years she complied perfectly.

3. On October 15, 2025, Petitioner reported as required to the ICE Enforcement and Removal Operations Santa Ana Sub-Office for a routine check-in. She was arrested there. The government's own Form I-213 states the reason: ICE learned that she had been "arrested on September 4, 2025, for Possession of Stolen Vehicle and violating her terms of Order of Release on Recognizance." (Ex. B.)

4. That premise is false as a matter of California law. On September 4, 2025, the Garden Grove Police Department issued Petitioner a Certificate of Release under California Penal Code § 851.6, certifying on its face that her taking into custody "was a

detention only, not an arrest," and releasing her under Penal Code § 849(b)(1) — the subdivision reserved for cases in which the officer "is satisfied that there are insufficient grounds for making a criminal complaint against the person arrested." (Ex. C.) By operation of Penal Code § 849(c), that event "shall not be deemed an arrest, but a detention only." No complaint was ever filed. No charge was ever brought. No conviction exists.

5. A judge of this Court has already granted Petitioner habeas relief once. In Rugama Perez v. Bowen, No. 5:25-cv-03360-FMO-DFM (C.D. Cal.), the Honorable Fernando M. Olguin granted in part an earlier petition filed by prior counsel — a petition Respondents never even opposed — and on February 5, 2026 ordered Respondents to provide Petitioner an individualized bond hearing before an Immigration Judge under 8 U.S.C. § 1226(a), with express instructions that the Immigration Judge has jurisdiction to consider bond.

6. Respondents complied in form and defeated the order in substance. At the court-ordered hearing on February 10, 2026, bond was denied on a single stated ground: "Mandatory Detention due to Laken Riley Act," with a one-line alternative that Petitioner "poses a risk of flight." The only event that could possibly trigger the Laken Riley Act's mandatory-detention provision, 8 U.S.C. § 1226(c)(1)(E), is the September 4, 2025 Garden Grove episode — the very episode the arresting agency itself certified was not an arrest, for want of sufficient grounds to charge. Petitioner has been classified into mandatory detention on the basis of an arrest that, as a matter of the law of the State where it occurred, does not exist.

7. Petitioner's removal proceedings remain pending: an Immigration Judge ordered her removed on June 18, 2026, she timely appealed, and the Board of Immigration Appeals received her appeal on July 13, 2026, where it remains pending with no briefing schedule. (Exs. D, E.) There is therefore no administratively final order of removal, 8 C.F.R. § 1241.1(a), the removal period under 8 U.S.C. § 1231(a)(1)(B)(i) has not begun, and § 1231 supplies Respondents no detention authority.

8. Petitioner brings three claims: (1) her detention exceeds statutory authority because she is not subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(E) and has never received the genuine individualized custody determination that 8 U.S.C. § 1226(a) requires; (2) her 324-day imprisonment on an affirmatively disproved factual premise, and the custody process built on that premise, violate the Due Process Clause of the Fifth Amendment; and (3) in the alternative, the classification is agency action contrary to law under the Administrative Procedure Act, 5 U.S.C. § 706(2). The question at the heart of this case is purely legal, the injury is renewed each day, and a months-long administrative appeal cannot remedy it. Petitioner requests an Order to Show Cause returnable within three (3) days under 28 U.S.C. § 2243 and her immediate release.

## II. JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. § 2241(a) and (c)(3), which authorize the federal courts to grant writs of habeas corpus to persons held in custody in violation of the Constitution or laws of the United States. See Hernandez v. Sessions, 872 F.3d 976, 987 (9th Cir. 2017). This Court also has jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. §§ 2201 and 2202 (declaratory and further relief), and Article I, Section 9, Clause 2 of the United States Constitution (the Suspension Clause).

10. Neither 8 U.S.C. § 1226(e) nor 8 U.S.C. § 1252 bars this action. Petitioner does not ask this Court to review a discretionary judgment applying the bond statute to the facts of her case. She challenges the statutory framework under which she is held — whether 8 U.S.C. § 1226(c)(1)(E) applies to her at all — and the constitutional adequacy of the process she has received. Whether a person falls within a mandatory-detention provision is a pure question of law within the district courts' habeas jurisdiction. Demore v. Kim, 538 U.S. 510, 516–17 (2003); Jennings v. Rodriguez, 583 U.S. 281, 292–94 (2018); Hernandez, 872 F.3d at 987–88.

11. Venue and territorial habeas jurisdiction lie in this District. Petitioner is physically confined at the Adelanto ICE Processing Center, 10250 Rancho Road,

Adelanto, California 92301, in San Bernardino County, within the Central District of California. Her immediate custodian performs his official duties here. 28 U.S.C. § 2241(a), (c)(3), (d); Rumsfeld v. Padilla, 542 U.S. 426, 442–43 (2004). Venue is proper in the Eastern Division because the place of confinement lies in San Bernardino County.

12. Petitioner previously sought habeas relief regarding this same detention in Rugama Perez v. Bowen, No. 5:25-cv-03360-FMO-DFM (C.D. Cal.), filed December 12, 2025 by prior counsel. That petition was granted in part on February 5, 2026, and judgment entered the same day; the case was administratively closed on June 26, 2026. The claims presented here arose from and after the February 10, 2026 custody hearing conducted pursuant to that judgment — principally Respondents' classification of Petitioner into mandatory detention under 8 U.S.C. § 1226(c)(1)(E) — and were not and could not have been adjudicated in the prior action. This action is related to No. 5:25-cv-03360-FMO-DFM within the meaning of Local Rule 83-1.3, and a Notice of Related Cases accompanies this Petition.

13. This action is also related to Maldonado Bautista v. Santacruz, No. 5:25-cv-01873-SSS-BFM (C.D. Cal.), within the meaning of Local Rule 83-1.3, because it presents related questions of immigration-detention authority and Petitioner invokes rights declared by the Final Judgment entered there, which remains operative within this District.

## III. PARTIES

14. Petitioner KATHIA BELEN RUGAMA PEREZ is a native and citizen of Nicaragua, born January 6, 1991 in Matagalpa, Nicaragua, who has resided in the United States since her inspection and parole on May 16, 2022. She is detained in Respondents' custody at the Adelanto ICE Processing Center, 10250 Rancho Road, Adelanto, California 92301.

15. Respondent FERETI SEMAIA is the Warden (or Facility Administrator) of the Adelanto ICE Processing Center and is Petitioner's immediate physical custodian. The Adelanto facility is operated under contract by The GEO Group, Inc.; the Warden is

therefore served and represented separately from the federal Respondents. He is sued in his official capacity.

16. Respondent JAIME RIOS is the Field Office Director for Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement, Los Angeles Field Office, with responsibility for Petitioner's custody. He is sued in his official capacity.

17. Respondent DAVID VENTURELLA is the Acting Director of U.S. Immigration and Customs Enforcement, 500 12th Street SW, Washington, DC 20536. He is sued in his official capacity.

18. Respondent MARKWAYNE MULLIN is the Secretary of the U.S. Department of Homeland Security, 2707 Martin Luther King Jr. Avenue SE, Washington, DC 20528, and is legally responsible for the administration of the immigration laws and for Petitioner's detention. He is sued in his official capacity.

19. Respondent TODD BLANCHE is the Attorney General of the United States, U.S. Department of Justice, 950 Pennsylvania Avenue NW, Washington, DC 20530, and is responsible for the administration of the Executive Office for Immigration Review ("EOIR"). He is sued in his official capacity.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES IS NOT REQUIRED AND WOULD IN ANY EVENT BE FUTILE

20. Section 2241 imposes no statutory exhaustion requirement. Exhaustion in habeas "can be either statutorily required or judicially imposed as a matter of prudence," and where the requirement is merely prudential, "courts have discretion to waive" it. Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007). Waiver is appropriate where "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Laing v. Ashcroft, 370 F.3d 994, 1000–01 (9th Cir. 2004). Those conditions are satisfied here.

21. First, an administrative custody appeal cannot supply adequate or timely relief. A custody appeal to the Board of Immigration Appeals is measured in months. The

Board's handling of Petitioner's own merits appeal illustrates the timeline: received July 13, 2026, it remains pending with no briefing schedule even set. (Exs. D, E.) Petitioner is on her three hundred twenty-fourth day of confinement, and each additional day of custody without lawful statutory authority is a fresh and independent deprivation of liberty. An appellate process measured in months cannot remedy an injury measured in days.

22. Second, the question presented is purely legal: whether a person may be classified into mandatory detention under 8 U.S.C. § 1226(c)(1)(E) as having been "arrested for" a theft offense, where the arresting agency has certified under California Penal Code §§ 851.6 and 849(b)(1) that the event was "a detention only, not an arrest," made for insufficient grounds to charge, and where state law deems the event a non-arrest. There is no factual record for an administrative body to develop.

23. Third, further resort to the administrative forum would be futile on this record. Petitioner has twice sought custody redetermination, and twice been denied — most recently notwithstanding a federal court order that she receive an individualized bond hearing under § 1226(a). Under the Immigration Judge's ruling that Petitioner is subject to mandatory detention, her equities can never be weighed, no matter how strong; the classification itself forecloses relief in that forum.

24. Fourth, irreparable injury is ongoing. The record documents the collapse of Petitioner's mental health, the loss of her employment, and the mounting harm to her family from every additional week of detention, injuries no later administrative decision can undo.

25. District courts in this Circuit routinely waive prudential exhaustion in immigration-detention habeas cases presenting purely legal questions and continuing injuries. See, e.g., Cerro Huerta v. Bondi, No. 1:25-cv-00941-JLT-HBK (E.D. Cal. Jan. 9, 2026); Romero Sanchez v. LaRose, No. 3:25-cv-03136-JLS-JLB (S.D. Cal. Nov. 24, 2025). The Court should do the same.

## V. FACTUAL BACKGROUND

**A. Inspection and Lawful Parole at a Port of Entry**

26. On May 16, 2022, Petitioner was encountered by the United States Border Patrol at or near Hidalgo, Texas. She did not evade inspection. She was processed by federal officers, and the Department of Homeland Security stamped her record "PAROLED" under section 212(d)(5) of the Immigration and Nationality Act, dated May 16–17, 2022. (Ex. A.) The government's Form I-213 states the fact in its own words: "USBP paroled RUGAMA into the US due to custody constraints and released RUGAMA on Alternate to Detention (ATD) instructing to report to ICE ERO." (Ex. B.)

27. Petitioner did exactly as she was instructed. On July 1, 2022 she reported to the ICE Alternatives to Detention office, and ICE de-escalated her case to non-detained status. (Ex. B.) On May 24, 2023, ICE issued her a Notice to Appear, Form I-862, charging inadmissibility under INA §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I), 8 U.S.C. §§ 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(I), and served her with an Order of Recognizance, Form I-220A. (Ex. B.) She was placed in ordinary removal proceedings under INA § 240, 8 U.S.C. § 1229a. She was never placed in expedited removal, and she was never referred for a credible fear interview.

28. Respondents' charging decision is irreconcilable with their own record. INA § 212(a)(6)(A)(i) reaches a person "present in the United States without being admitted or paroled." DHS charged Petitioner under that provision while simultaneously recording, on its own forms, that she was paroled. (Exs. A, B.) Either Petitioner was paroled — in which case that charge fails on its own terms and Respondents must prove a lawful termination of parole under 8 C.F.R. § 212.5(e), which they have never identified — or she was not, in which case their entire treatment of her entry is wrong. Respondents cannot have it both ways.

**B. Life in the United States**

29. Petitioner is married to Samuel Hinojosa, a United States citizen, as Respondents' own Form I-213 records. (Ex. B.) Her marriage, combined with her inspection and parole, makes her potentially eligible to adjust status to lawful permanent

residence under INA § 245(a), 8 U.S.C. § 1255(a). A noncitizen with a citizen spouse and a pathway to permanent residence does not abscond. Her incentive to appear is overwhelming.

30. The United States granted Petitioner employment authorization. She holds a federal Employment Authorization Document, issued February 8, 2024 and valid through February 7, 2029; a California identification card valid through January 6, 2030; and a Social Security number issued for work with DHS authorization. (Ex. F.) She lived openly at a fixed address in Anaheim, California, and worked as a certified nursing assistant for a health services employer in Santa Ana, caring for elderly patients. (Ex. B.) She is, in the government's own records, a person the United States authorized to live and work here.

**C. The September 4, 2025 Detention That California Law Declares Was Not an Arrest**

31. On September 4, 2025, Petitioner was taken into custody by the Garden Grove Police Department. She was released the same day without any criminal charge. The Department issued her a Certificate of Release on its own Form 352, executed under California Penal Code § 851.6, certifying that the taking into custody "was a detention only, not an arrest," and releasing her expressly under "Paragraph (1) of subdivision (b) of Penal Code Section 849." (Ex. C.)

32. The cited subdivision is not a technicality. Penal Code § 849(b)(1) authorizes release only where the peace officer "is satisfied that there are insufficient grounds for making a criminal complaint against the person arrested." And § 849(c) provides that thereafter "such arrest shall not be deemed an arrest, but a detention only." The State of California has certified, in writing, that Petitioner was not arrested and that there were insufficient grounds to charge her. No criminal complaint was ever filed. No conviction has ever entered.

33. The State's own criminal-history repository confirms the certificate. Petitioner's California Department of Justice record, generated May 15, 2026 through the

California Law Enforcement Telecommunications System, contains exactly one law-enforcement entry: the September 4, 2025 Garden Grove event, recorded as "BOOK / RELEASE" on a reference to Penal Code § 496d(a), with no complaint filed, no charge brought, and no disposition of any kind. The only other entry in her record is her application for certification as a nurse assistant. (Ex. G.)

34. Respondents nonetheless built Petitioner's detention on that non-event. The Form I-213 recites that ICE would detain her "[d]ue to RUGAMA's recent arrest for possession of stolen vehicle and violating the terms of Order of Release on Recognizance," while recording in the same document that DHS's own records checks were "[n]egative" on NCIC and revealed no derogatory information. (Ex. B.) Nor can Respondents claim ignorance: the Certificate of Release, together with the text of Penal Code § 849, was filed into Petitioner's immigration-court record on December 30, 2025, bearing the agency's own electronic-upload legend from Adelanto. (Ex. H.) Since at least that date, the sole stated premise of Petitioner's detention has stood affirmatively refuted in Respondents' own records.

**D. Arrest at a Compelled Check-In and 324 Days of Confinement**

35. On October 15, 2025, Petitioner reported as required to the ICE Enforcement and Removal Operations Santa Ana Sub-Office for a Compliance Assistance Reporting Terminal check-in. She appeared voluntarily and on time, as she had every time before. She was taken into custody at that appointment. (Ex. B.) Petitioner was arrested for the act of complying.

36. Petitioner has been continuously detained since October 15, 2025, and is presently held at the Adelanto ICE Processing Center. As of the date of this Petition, she has been detained for three hundred twenty-four (324) days.

**E. The First Habeas Petition, the Court-Ordered Bond Hearing, and the Laken Riley Act Denial**

37. Petitioner did not sit silent. In November 2025, weeks into her confinement, she wrote by hand to the Immigration Judge then assigned to her case, begging the court

to study her case. She described her flight from Nicaragua, her inspection and parole, the asylum application she filed within the one-year statutory period, her work permit and career as a nursing assistant, her marriage to a United States citizen, and the September 2025 episode — in which she was a passenger in a vehicle she did not know had been reported stolen and was released within hours once the officers were satisfied of her innocence. (Ex. I.)

38. On December 12, 2025, through prior counsel, Petitioner filed a petition for a writ of habeas corpus in this Court. Rugama Perez v. Bowen, No. 5:25-cv-03360-FMO-DFM (C.D. Cal.). Respondents never opposed it. On January 14, 2026, Magistrate Judge Douglas F. McCormick issued a Report and Recommendation concluding that Petitioner is detained under 8 U.S.C. § 1226(a), and on February 5, 2026 District Judge Fernando M. Olguin accepted the Report, granted the petition in part, entered judgment, and ordered Respondents to arrange an individualized bond hearing before an Immigration Judge under 8 U.S.C. § 1226(a) within five days, "with instructions that the immigration judge has jurisdiction under 8 U.S.C. § 1226(a) to consider bond," and to report the outcome and, if bond were denied, the reasons. (Ex. J.)

39. The hearing took place on February 10, 2026, before Immigration Judge Carlos Maury at the Adelanto Immigration Court. Bond was denied. The order states the grounds in two sentences: "Mandatory Detention due to Laken Riley Act. Alternative ruling is that the Respondent poses a risk of flight." Petitioner reserved appeal, with any appeal due March 12, 2026. Respondents reported that outcome to Judge Olguin on February 17, 2026, and the prior case was administratively closed on June 26, 2026. (Ex. K.)

40. Two weeks after invoking mandatory detention to deny bond, the Government told Petitioner she might be entitled to seek exactly what it had just refused. On February 24, 2026, an ICE deportation officer at Adelanto personally served her with the court-ordered Class Action Notice in Maldonado Bautista v. Santacruz, advising her that she "may be a member" of a certified class of detainees who "may be unlawfully

detained and may seek release on bond or conditional parole under 8 U.S.C. § 1226(a)," and that she "may also be entitled to a bond hearing upon [her] request to the Immigration Court." (Ex. L.) No release on bond or conditional parole followed.

41. Petitioner kept asking. In May 2026 she wrote by hand to Immigration Judge Steven Marcus, pleading for her liberty "under any condition that you suggest." (Ex. M.) In or about May or June 2026 she again sought custody redetermination, and her request was again denied; the order memorializing that second denial has been requested from the Immigration Court's records system and will be lodged with the Court upon receipt. As Petitioner recounted in a letter written from Adelanto on July 30, 2026: "I have had court and they have denied my bond in two different occasions. I sent letters to the judge with no response." (Ex. N.)

42. The cost has not been abstract. In February 2026, while Petitioner was detained, her twelve-year-old nephew — whose cancer treatment she had been supporting financially — died. (Ex. M.) Her letters describe the deterioration of her mental health, the loss of her employment and of the patients in her care, and the strain on her United States citizen husband, now alone. (Exs. M, N.) No forum has ever weighed any of this against any governmental interest.

**F. The Removal Order Is Not Final: The Appeal Is Pending Before the Board**

43. An Immigration Judge ordered Petitioner removed on June 18, 2026, and Petitioner timely perfected an appeal to the Board of Immigration Appeals, which received it on July 13, 2026 and issued its Filing Receipt on July 28, 2026. (Exs. D, E.) The appeal remains pending and undecided — with no briefing schedule set — as of the date of this Petition. (Ex. D.)

44. The legal consequence is dispositive. An order of removal entered under INA § 240 "shall become final … [u]pon dismissal of an appeal by the Board of Immigration Appeals." 8 C.F.R. § 1241.1(a). No dismissal has occurred, and a decision from which an appeal has been taken "shall not be executed … while an appeal is pending." 8 C.F.R. § 1003.6(a). Because the removal period under 8 U.S.C. § 1231(a)(1)(B)(i) begins only

when the order becomes administratively final, the removal period has not begun and 8 U.S.C. § 1231 confers no detention authority over Petitioner.

**G. No Criminal History**

45. Petitioner has never been convicted of any crime. No criminal complaint has ever been filed against her. Her only law-enforcement contact was the September 4, 2025 encounter that the Garden Grove Police Department certified "was a detention only, not an arrest," for want of sufficient grounds to charge (Ex. C), and that her California Department of Justice record reflects as a bare "BOOK / RELEASE" with no disposition (Ex. G). She has no prior order of removal; her sole encounter with immigration authorities before her Notice to Appear was the May 16, 2022 inspection at which she was paroled. (Exs. A, B.)

## VI. LEGAL FRAMEWORK

**A. With the Board Appeal Pending, Detention Authority Lies in § 1226, Not § 1231**

46. The Immigration and Nationality Act allocates detention authority by procedural posture. Section 1226 governs detention "pending a decision on whether the alien is to be removed from the United States," 8 U.S.C. § 1226(a); § 1231 governs detention during and after the "removal period," which begins only on "[t]he date the order of removal becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i). Because Petitioner's Board appeal is pending, her order is not administratively final and her detention is governed by § 1226. Prieto-Romero v. Clark, 534 F.3d 1053, 1059–62 (9th Cir. 2008); Casas-Castrillon v. DHS, 535 F.3d 942, 947–48 (9th Cir. 2008). A judge of this Court has already so held as to this very Petitioner. Rugama Perez v. Bowen, No. 5:25-cv-03360-FMO-DFM (C.D. Cal. Feb. 5, 2026). (Ex. J.)

**B. Petitioner Is Not Subject to Mandatory Detention Under 8 U.S.C. § 1226(c)(1)(E)**

47. The Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), added subparagraph (E) to the mandatory-detention provision of 8 U.S.C. § 1226(c)(1). It reaches a noncitizen who (i) is inadmissible under 8 U.S.C. § 1182(a)(6)(A), (a)(6)(C), or (a)(7), and (ii) "is charged with, is arrested for, is convicted of, admits having committed,

or admits committing acts which constitute the essential elements of" a burglary, theft, larceny, or shoplifting offense. Both elements must be satisfied. Detention under § 1226(c) is a drastic exception to the individualized custody regime of § 1226(a), and it applies only to those who actually fall within its terms. See Demore v. Kim, 538 U.S. 510 (2003); Jennings v. Rodriguez, 583 U.S. 281, 288–89 (2018).

48. Petitioner satisfies neither the letter nor the premise of clause (ii). She has not been charged: no criminal complaint was ever filed. She has not been convicted, and she has admitted nothing. The sole remaining hook is "is arrested for" — and the arresting jurisdiction itself has declared, through a statutory certificate issued under Penal Code § 851.6, that the September 4, 2025 event "was a detention only, not an arrest," that she was released under § 849(b)(1) for insufficient grounds to make a criminal complaint, and, by operation of § 849(c), that the event "shall not be deemed an arrest, but a detention only." (Ex. C.) The State's criminal-history repository records the event accordingly, with no disposition. (Ex. G.)

49. A person "is arrested for" an offense within the meaning of § 1226(c)(1)(E) only where there is an arrest the law recognizes. Congress legislated against the backdrop of ordinary arrest law, in which an arrest is a seizure upon probable cause that ripens into a charge or is nullified. Where the arresting officer certifies there were insufficient grounds even to seek a complaint — the officer's own negation of probable cause — and state law converts the event into a non-arrest and mandates that it "shall not be deemed an arrest," there is nothing left for the federal statute to operate on. Any other reading would consign a person to mandatory civil detention, with no possibility of bond, on the basis of a momentary mistaken seizure that the criminal-justice system itself immediately disavowed — an interpretation that would raise grave due process concerns and must be avoided. See Zadvydas v. Davis, 533 U.S. 678, 690 (2001) (civil detention statutes are read narrowly to avoid serious constitutional doubt); Demore, 538 U.S. at 513–14 (upholding § 1226(c) as applied to a conceded qualifying conviction). The Court need not

decide whether Penal Code § 496d(a) is a qualifying "theft" offense, because there was no qualifying arrest, charge, conviction, or admission at all.

50. Clause (i) is independently unproven on Respondents' own records. The Government's inadmissibility theory rests on charges under § 1182(a)(6)(A)(i) and (a)(7)(A)(i)(I) — yet its own forms record that Petitioner was inspected and paroled under § 212(d)(5) (Exs. A, B), which defeats the charge of presence "without being admitted or paroled" unless Respondents prove a lawful termination of parole under 8 C.F.R. § 212.5(e). They have never identified one. Respondents bear the burden of establishing their own detention authority, and they cannot carry it with mutually exclusive theories.

51. Because § 1226(c)(1)(E) does not reach her, Petitioner's detention is governed by § 1226(a) — the provision that authorizes release on bond or conditional parole and that this Court has already held applicable to her. A detainee is entitled to contest her inclusion in a mandatory-detention category, and where inclusion fails as a matter of law, continued detention without the individualized custody process of § 1226(a) is detention without statutory authority. Cf. Matter of Joseph, 22 I&N Dec. 799 (BIA 1999).

**C. The February 10, 2026 Hearing Did Not Supply the Individualized Determination § 1226(a) and Due Process Require**

52. Civil immigration detention must bear a reasonable relation to a legitimate governmental purpose and must be accompanied by constitutionally adequate procedures. Zadvydas, 533 U.S. at 690; Singh v. Holder, 638 F.3d 1196, 1200–02 (9th Cir. 2011); Hernandez v. Sessions, 872 F.3d 976, 990–93 (9th Cir. 2017). The February 10, 2026 hearing — the only custody hearing Petitioner has ever received, and only because a federal judge ordered it — was framed and foreclosed by the erroneous mandatory-detention classification. Once the Immigration Judge concluded that the Laken Riley Act applied, Petitioner's equities were legally irrelevant; the "hearing" could have only one outcome.

53. The one-line alternative finding that Petitioner "poses a risk of flight" cannot bear the weight of 324 days of confinement. It is unaccompanied by any stated reasoning, and it is irreconcilable with the record: a United States citizen husband; a statutory path to permanent residence that only her appearance can vindicate; federal work authorization through 2029; a fixed residence; three and a half years of perfect reporting compliance, culminating in her appearance at the very check-in where she was arrested; and a merits appeal she herself is prosecuting. (Exs. A, B, F.) A finding of flight risk entered within a mandatory-detention framework, without weighing any of this, is not the individualized determination the statute and the Constitution require.

**D. Any Fallback to § 1225(b) Is Foreclosed**

54. To the extent Respondents revert to designating Petitioner an "applicant for admission" detained under 8 U.S.C. § 1225(b)(2)(A), that theory is foreclosed three times over: by the Ninth Circuit's published holding that noncitizens apprehended in the interior are not subject to § 1225(b)(2)(A) mandatory detention, Rodriguez Vazquez v. Bostock, No. 25-6842, slip op. (9th Cir. July 30, 2026); by the December 18, 2025 Final Judgment in Maldonado Bautista v. Santacruz, No. 5:25-cv-01873-SSS-BFM (C.D. Cal.), which the Ninth Circuit expressly left in place as to the Central District of California; and by the February 5, 2026 judgment in Petitioner's own prior case holding her detention governed by § 1226(a). (Ex. J.) Indeed, Respondents' own officer served Petitioner with the Maldonado Bautista class notice at Adelanto on February 24, 2026. (Ex. L.)

**E. No Deference Is Owed**

55. After Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024), courts exercise independent judgment on whether an agency has acted within its statutory authority. No agency construction of § 1226(c)(1)(E) — and no Immigration Judge's unexplained application of it — commands deference on the pure legal question whether a state-certified non-arrest is an "arrest" within the meaning of the statute.

## VII. CLAIMS FOR RELIEF

### COUNT ONE

### Detention in Excess of Statutory Authority — 8 U.S.C. §§ 1226(a), 1226(c)(1)(E)

56. Petitioner realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

57. Petitioner is not subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(E). She has never been charged with, convicted of, or admitted any qualifying offense, and the sole "arrest" invoked is an event that the arresting jurisdiction certified was "a detention only, not an arrest," made for insufficient grounds, and that state law commands "shall not be deemed an arrest." (Exs. C, G.) Her detention is governed by 8 U.S.C. § 1226(a), as this Court has already adjudicated. (Ex. J.)

58. Section 1226(a) confers no authority to detain categorically. Respondents' classification of Petitioner into mandatory detention, and the resulting denial of any genuine individualized custody determination across 324 days, exceed the authority Congress conferred. Detention that exceeds statutory authority is unlawful, and the writ must issue.

### COUNT TWO

### Violation of the Fifth and Fourth Amendments to the United States Constitution

59. Petitioner realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

60. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. Petitioner's 324-day imprisonment rests on a factual premise — a September 4, 2025 "arrest" — that the State of California has certified in writing is false, that the State's own repository disproves, and that Respondents' own immigration-court record has refuted since December 30, 2025. (Exs. C, G, H.) Detention premised on a fact the record affirmatively disproves, and long known to disprove, is not reasonably related to any legitimate governmental purpose.

61. The process afforded compounds the violation. The only custody hearing Petitioner ever received — compelled by a federal court — was foreclosed at the threshold by the erroneous mandatory-detention classification, and its unexplained one-line alternative finding ignored every fact bearing on flight risk. (Ex. K.) Her subsequent request for redetermination was denied, her handwritten pleas went unanswered, and the Government's own class notice promised custody consideration that never came. (Exs. I, L, M, N.) Detention of this length, on this record, without any genuine individualized determination of danger or flight risk, violates the Due Process Clause.

62. Separately, Petitioner's seizure implicates the Fourth Amendment. Respondents arrested her without a judicial warrant when she appeared, as compelled, at a scheduled ICE reporting appointment — converting a mandatory compliance obligation into the mechanism of her confinement. A warrantless immigration arrest is lawful only where the officer has reason to believe both that the person is in violation of law and that she "is likely to escape before a warrant can be obtained." INA § 287(a)(2), 8 U.S.C. § 1357(a)(2). No such likelihood existed or could have existed: Petitioner was standing inside an ICE field office, at ICE's direction, having reported without fail for three and a half years. Cf. Gonzalez-Rivera v. INS, 22 F.3d 1441, 1449 (9th Cir. 1994). These facts underscore the absence of any individualized assessment and the equitable need for immediate relief.

**COUNT THREE**

**Alternative Claim Under the Administrative Procedure Act, 5 U.S.C. § 706(2)**

63. Petitioner realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

64. Alternatively, to the extent Respondents' classification and continued detention of Petitioner under 8 U.S.C. § 1226(c)(1)(E) constitutes reviewable final agency action, that action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right," and "in excess of statutory jurisdiction, authority, or limitations," in violation of 5 U.S.C. § 706(2)(A)–(C): it rests

on an "arrest" the agency's own record disproves, disregards the statutory elements of the provision invoked, and contradicts a federal judgment binding on Respondents as to this Petitioner. This claim is pleaded in the alternative and does not diminish Petitioner's primary entitlement to habeas relief under 28 U.S.C. § 2241.

## VIII. RELEASE BY THIS COURT IS THE ONLY ADEQUATE REMEDY

65. Petitioner realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

66. Another remand for another custody hearing would not remedy the violation; it would perpetuate it. Petitioner has already received the remedy of a court-ordered bond hearing — and Respondents converted it into a mandatory-detention ruling that made her equities legally irrelevant. Under that ruling, no Immigration Judge will ever weigh her circumstances, no matter how many hearings are ordered. Her second request for redetermination was denied. (Exs. K, N.) A custody appeal to the Board would consume months — the Board has yet even to set a briefing schedule on the merits appeal it received on July 13, 2026 (Ex. D) — while Petitioner's unlawful confinement, now on its three hundred twenty-fourth day, continues to inflict daily and irreparable injury.

67. The institutional condition of the immigration courts confirms the point. According to EOIR data obtained and analyzed by National Public Radio in February 2026, the permanent immigration judge corps fell from 726 in February 2025 to 553 one year later — a net loss of roughly twenty-four percent in a single year, with nearly one hundred immigration judges terminated outright in 2025 and more than two hundred total departures. The New York Times reported in April 2026 that more than one hundred immigration judges had been dismissed. Analysis of EOIR records published in July 2026 shows the bond denial rate at the Adelanto Immigration Court rose from approximately thirty-nine percent (January 2024–November 2025) to over fifty-seven percent (November 2025–April 2026), with a median bond, where granted at all, of $10,000 — itself a denial for a detained nursing assistant out of work for nearly eleven months.

68. The habeas power is equal to this record. Where detention is unauthorized by statute and repugnant to due process, the remedy is discharge. This Court has authority under 28 U.S.C. §§ 2241 and 2243 to "dispose of the matter as law and justice require," and law and justice here require release. Petitioner has no criminal history of any kind; a written certificate from the arresting agency — corroborated by the State's own repository — establishing that her only law-enforcement contact was not an arrest (Exs. C, G); a United States citizen husband; federal work authorization through February 2029; a fixed residence in Orange County; a profession caring for the elderly; a statutory path to permanent residence; a merits appeal she is actively prosecuting; and a multi-year record of reporting to every appointment ICE ever set, including the one at which she was seized. Release on her own recognizance is amply supported. Electronic monitoring is neither necessary nor appropriate on this record.

## IX. DECLARATORY RELIEF

69. Petitioner realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

70. An actual and justiciable controversy exists between Petitioner and Respondents concerning the statutory authority under which Petitioner is detained and her entitlement to release. Respondents assert that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(E); Petitioner asserts that no qualifying charge, arrest, conviction, or admission exists, that her detention is governed by 8 U.S.C. § 1226(a) as this Court has already adjudicated, and that no administratively final order of removal exists while her appeal is pending. The controversy is definite and concrete and is capable of specific judicial resolution. Pursuant to 28 U.S.C. §§ 2201 and 2202, Petitioner is entitled to declarations accordingly, including that the September 4, 2025 event — certified under California Penal Code §§ 851.6 and 849(b)(1) as a detention only — is not an arrest for a qualifying offense within the meaning of 8 U.S.C. § 1226(c)(1)(E), and that her continued detention without any genuine individualized custody determination violates the Due Process Clause of the Fifth Amendment.

## X. PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully prays that this Court:

1. ISSUE an Order to Show Cause, returnable within three (3) days pursuant to 28 U.S.C. § 2243, directing Respondents to show cause why the writ of habeas corpus should not be granted;

2. ISSUE a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately from custody on her own recognizance, without electronic monitoring;

3. DECLARE, pursuant to 28 U.S.C. §§ 2201 and 2202, that Petitioner is not subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(E); that the September 4, 2025 Garden Grove event, certified under California Penal Code §§ 851.6 and 849(b)(1) as "a detention only, not an arrest," is not an arrest for a qualifying offense within the meaning of that provision; that her detention is governed by 8 U.S.C. § 1226(a); that no administratively final order of removal exists while her appeal is pending before the Board of Immigration Appeals; and that her continued detention without any genuine individualized custody determination violates the Fifth Amendment;

4. ENJOIN Respondents from re-detaining Petitioner on the basis of the September 4, 2025 Garden Grove event, 8 U.S.C. § 1226(c)(1)(E), or INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A), absent a material change in circumstances and lawful authority;

5. ORDER Respondents to return to Petitioner any personal identity documents or property seized from her in connection with her October 15, 2025 detention and not yet returned, including her Employment Authorization Document, California identification card, and Social Security card;

6. AWARD Petitioner her costs and reasonable attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, to be requested by a properly filed separate motion; and

7. GRANT such other and further relief as this Court deems just and proper.

Dated: September 4, 2026

Respectfully submitted,

Christopher J. DeSalva

CHRISTOPHER JOSEPH DESALVA
Law Office of Christopher Joseph DeSalva
Attorney for Petitioner
KATHIA BELEN RUGAMA PEREZ

**VERIFICATION**

I, CHRISTOPHER JOSEPH DESALVA, declare as follows:

1. I am an attorney licensed to practice law in the State of California and admitted to practice before this Court, and I am counsel of record for Petitioner Kathia Belen Rugama Perez in this action.

2. Petitioner is detained at the Adelanto ICE Processing Center in Adelanto, California, and is unable to verify this Petition personally. I therefore verify it on her behalf pursuant to 28 U.S.C. § 2242, which authorizes a petition for a writ of habeas corpus to be signed and verified by someone acting on the detained person's behalf.

3. I have read the foregoing Verified Petition for Writ of Habeas Corpus. The facts stated therein are based on my personal knowledge, my review of the records of the underlying removal and custody proceedings and of Rugama Perez v. Bowen, No. 5:25-cv-03360-FMO-DFM (C.D. Cal.), the exhibits lodged in support of the Petition, and information provided to me by Petitioner and her family. I believe those facts to be true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 4, 2026, at Indio, California.

Christopher J. DeSalva
CHRISTOPHER JOSEPH DESALVA
Attorney for Petitioner

**CERTIFICATE OF SERVICE**

I, DR. VICTOR M. VIRUENA, declare as follows:

1. I am over the age of eighteen years and am not a party to this action. My business address is in Palm Desert, California. I make this declaration on behalf of Christopher J. DeSalva, Esq., counsel of record for Petitioner.

2. On September 4, 2026, I caused the foregoing VERIFIED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; REQUEST FOR ORDER TO SHOW CAUSE WITHIN THREE (3) DAYS; DECLARATORY RELIEF, together with the Index of Exhibits and the exhibits lodged in support, to be filed electronically with the Clerk of the United States District Court for the Central District of California using the Court's CM/ECF system.

3. The CM/ECF system will send notification of such filing to all Respondents and to all counsel of record entitled to electronic notice, including the United States Attorney's Office for the Central District of California as counsel for the named Respondents. Service is complete upon electronic filing pursuant to Federal Rule of Civil Procedure 5(b)(2)(E) and Local Rule 5-3.2.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 4, 2026, at Palm Desert, California.

*Victor M. Viruena*

DR. VICTOR M. VIRUENA
On behalf of Christopher J. DeSalva, Esq.