**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| KATHIA BELEN RUGAMA PEREZ,<br><br>Petitioner,<br><br>v.<br><br>FERETI SEMAIA, et al.,<br><br>Respondents. | Case No. 5:26-cv-05138-DFM<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

# I. INTRODUCTION AND PROCEDURAL BACKGROUND

## A. The Prior Unopposed Petition

On December 12, 2025, Petitioner Kathia Belen Rugama Perez, an immigration detainee, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241. See Rugama Perez v. Bowen, No. 25-3360 ("Rugama Perez I"), Dkt. 1 ("Prior Petition"). In the Prior Petition, Petitioner alleged that she was paroled into the United States in 2022 and released on her own recognizance. See id. ¶ 23. Petitioner alleged that she was detained on October 15, 2025. See id. ¶ 25. She alleged that she "will apply for asylum and adjustment of status," id. ¶ 26, and that she had "filed a motion for custody redetermination with the Immigration Court," id. ¶ 27. Petitioner alleged that the "immigration judge will [deny] the bond for lack of jurisdiction, citing the BIA case of Yajure-Hurtado." Id.

Respondents did not file an opposition or otherwise respond to the Prior Petition. Given Respondents' non-opposition, this Court wrote a Report and Recommendation to the District Judge recommending that Respondents be ordered to arrange for a bond hearing under 8 U.S.C. § 1226(a). See Rugama-Perez I, Dkt. 6. In so doing, the Court concluded that § 1226(a) rather than § 1225(b) applied to a noncitizen in Petitioner's circumstances. See id. at 3, 5.[1] On February 6, 2026, after accepting this Court's Report and Recommendation, the District Judge granted in part the unopposed petition and ordered Respondents to arrange for an individualized bond hearing for Petitioner before an immigration judge ("IJ") under 8 U.S.C. § 1226(a) within five (5) days, with an express instruction that the IJ has jurisdiction under 8 U.S.C. § 1226(a) to consider bond. See id., Dkts. 7-8.

On February 17, 2026, the government submitted a status report as ordered by the District Judge. See id., Dkt. 9. In the status report, the government reported that Petitioner had a bond hearing on February 10, 2026, at which the IJ denied bond because Petitioner was subject to mandatory detention under the Laken Riley Act, and alternatively that Petitioner was a risk of flight. See id. at 2; see also Dkt. 9-1 at 2. Petitioner did not file a motion to enforce the judgment or otherwise contest Respondents' compliance with the District Judge's order in Rugama Perez I.

**B. The Instant Petition**

On September 4, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. See Dkt. 1 ("Petition"). The Petition alleges the following claims: (1) Petitioner's detention exceeds authority under the Immigration and Nationality Act ("INA") because she is not subject to

---

[1] This Court's outcome on the application of § 1226(a) rather than § 1225(b) was eventually confirmed by the Ninth Circuit in Rodriguez Vazquez v. Bostock, 183 F.4th 1160 (9th Cir. 2026).

mandatory detention under 8 U.S.C. § 1226(c)(1)(E) and has never received the genuine individualized custody determination that § 1226(a) requires; (2) her prolonged detention with constitutionally inadequate procedures violates the Fifth Amendment Due Process Clause, and her immigration arrest without a judicial warrant implicates the Fourth Amendment; and (3) alternatively, Respondents' classification of Petitioner under § 1226(c)(1)(E) violates the Administrative Procedure Act, 5 U.S.C. § 706(2) ("APA"). See id. ¶¶ 8, 56-64. Petitioner seeks immediate release with the return of her belongings and without electronic monitoring; declaratory and injunctive relief; and fees under the Equal Access to Justice Act. See id. at 21-22.

On September 11, 2026, Respondents filed an Answer. See Dkt. 9 ("Answer"). Respondents argue that Petitioner's due process claims fail because she received notice of her bond hearing, an opportunity to be heard, and a statement of the reasons for the denial of bond. See id. at 4. Respondents also argue that Petitioner is subject to mandatory detention under the Laken Riley Act. See id. at 5.

On September 15, 2026, Petitioner filed a Reply. See Dkt. 10 ("Reply"). On September 23, 2026, Respondent submitted additional documents at the Court's request. See Dkt. 12. Petitioner filed a response. See Dkt. 13. As set forth in greater detail below, the current Petition and Respondents' Answer provide much more detail about Petitioner's circumstances and the proceedings in immigration court than what was presented in Rugama Perez I.

## II. BACKGROUND

### A. Petitioner's Immigration History

Petitioner is a native and citizen of Nicaragua in her mid-thirties. See Petition, Ex. B ("Form I-213") at 1.[2] On May 16, 2022, the United States Border Patrol arrested Petitioner at or near Hidalgo, Texas. See id. at 2. The next day, she was paroled into the United States under INA § 212(d)(5) until July 16, 2022. See id., Ex. A. The Form I-213 indicates that on July 1, 2022, Petitioner reported to U.S. Immigration and Customs Enforcement ("ICE"); ICE de-escalated her case to non-detained. See Form I-213 at 3.

On May 24, 2023, ICE issued Petitioner: (1) a Form I-862 Notice to Appear, charging her as inadmissible under INA §§ 212(a)(6)(A)(i) and (a)(7)(A)(i)(I) and ordering her to appear before an IJ on January 9, 2024; and (2) a Form I-220A Order of Recognizance (OREC).[3] See id.; see also Answer, Ex. B at 1-5. Petitioner alleges that she complied with her reporting requirements for three-and-a-half years, reporting to every immigration appointment she was ever given. See Petition ¶¶ 1-2. Petitioner alleges that she is married to a United States citizen and claims potential eligibility to adjust status to that of a lawful permanent resident. See id. ¶ 29. The Form I-213 indicates that on January 9, 2024, an IJ vacated Petitioner's hearing, and as of October 15, 2025, her case remained pending a future hearing date. See Form I-213 at 3. Meanwhile, United States Citizen and Immigration Services issued Petitioner employment authorization valid from February 8, 2024 through February 7, 2029. See Petition, Ex. F. Petitioner alleges that before her detention, she worked as a certified nursing assistant for a health services

---

[2] When citing the Form I-213, the Court refers to the document's internal pagination. The Court otherwise refers to CM/ECF pagination, unless otherwise noted.

[3] The Form I-220A OREC is not in the record.

employer in Santa Ana, caring for elderly patients. See id. ¶ 30. She also alleges that she had been financially supporting her nephew's cancer treatment. See id. ¶ 42.

**B. The September 4, 2025 Encounter with Local Police**

On September 4, 2025, Petitioner had an encounter with the Garden Grove Police Department (GGPD). See Petition ¶ 31, Ex. C. Petitioner was taken into custody during this encounter but released the same day without any criminal charge under California Penal Code § 849(b)(1) and provided with a "certificate of release" by the GGPD. See id., Ex. C. The certificate of release identifies a charge of California Penal Code § 496d(a) but also states that this "was a detention only, not an arrest." Id.

**C. Petitioner's October 15, 2025 Detention**

On October 15, 2025, Petitioner reported to the ICE Enforcement Removal Operations (ERO) Santa Ana suboffice for a Compliance Assistance Reporting Terminal (CART) check-in. See Form I-213 at 2. Petitioner alleges that she reported voluntarily and on time, as she had every time before. See Petition ¶ 35. She was detained. See id. The Form I-213 documenting her detention states: "[Petitioner] acknowledged and admitted that she was arrested on September 4, 2025, for Possession of Stolen Vehicle and violating her terms of [OREC]. [Petitioner] was taken into ICE custody without incident." Form I-213 at 2. The Form I-213 further states: "[d]ue to [Petitioner's] recent arrest for possession of stolen vehicle and violating the terms of [OREC], ICE ERO will process [Petitioner's] case as a custody re-determination and will continue her [removal] proceedings in ICE custody." Id. at 3. At the time of her detention, Petitioner was also given a Form I-286, Notice of Custody Determination. See Answer, Ex. E. The notice invokes the authority of INA § 236. See id. The notice appears to be signed by Petitioner,

with checkboxes acknowledging receipt of the notice and requesting an IJ's review of her custody determination. See id.

**D. Petitioner's Initial Custody Redetermination Proceedings**

On November 18, 2025, an IJ denied Petitioner's custody redetermination request. See id., Ex. F. The IJ's order stated that Petitioner's request for a change in custody status was denied because "No jurisdiction. INA 235(b)." Id. Petitioner reserved appeal, with an appeal deadline of December 18, 2025. See id., Ex. F. Almost two months later, on January 16, 2026, the same IJ denied a second custody redetermination request, noting the prior denial and stating that Petitioner had not filed a motion to reconsider establishing changed circumstances. See id., Ex. G. Petitioner reserved appeal, with an appeal deadline of February 17, 2026. See id.

**E. Petitioner's February 10, 2026 Hearing**

A third custody redetermination hearing was held before the same IJ on February 10, 2026. See id., Ex. H. This hearing was held based on the District Judge's order on Petitioner's unopposed Prior Petition. That order, one will recall, directed a bond hearing under 8 U.S.C. § 1226(a), see Rugama-Perez I, Dkt. 7, something which to that point Petitioner had not received notwithstanding nearly four months of detention and her request for an IJ's review of her custody determination.

After hearing Petitioner's counsel argue as to why Petitioner should be released, the IJ asked government counsel for the government's position. Government counsel began by faulting this Court for ordering the hearing, notwithstanding the government's failure to oppose the petition in Rugama-Perez I. See Dkt. 12, Ex. J ("Hearing Tr.") at 4:17 ("[T]his TRO should never

have been granted, but we are where we are.").[4] Government counsel continued:

> [Petitioner] was in fact arrested for possession of a stolen vehicle. It's on her rap sheet. In fact, I'm going to upload that right now. It's in the I-213, but it's also in the rap sheet so it's quite clear. If that wasn't disclosed in the district court, it sure should have been because this is not a 236(a) case. At the very least, this should be their burden to prove that it's 236(a), which they cannot do on this record. But I understand that the court has to comply with the district court record. I just take issue with how it got here.

Id. at 4:18-24. The IJ clarified, "Are you saying she's subject to the Laken Riley Act?" Id. at 5:1. Government counsel responded, "Absolutely yes. Her arrest was in September of 2025 for possession of a stolen vehicle, which is a categorical theft crime." Id. at 5:3-4.

The IJ asked Petitioner's counsel to respond. Id. at 5:8-9. Petitioner's counsel argued that the September 4, 2025 encounter with the GGPD was not an arrest:

> She was not formally arrested. It was a brief detention for investigation. She was released that same day. No charges were filed against her. She was not -- and she didn't steal any vehicles. She was in a vehicle that was reported stolen, but she had nothing to do with that. It was a situation of wrong place, wrong time.

Id. at 5:11-15. The IJ rejected this argument, noting that "I can't set a bond because it is a -- even a formal -- informal detention is still an arrest, and it's on her rap sheet so I don't have jurisdiction under the Laken Riley Act." Id. at 5:17-19.

---

[4] When citing the Hearing Transcript, the Court refers to the document's internal pagination. The Court otherwise refers to CM/ECF pagination, unless otherwise noted.

Government counsel then asked the IJ to "rule in the alternative," noting (correctly) that this Court had ordered a bond hearing under 8 U.S.C. 1226(a). Id. at 5:23-25. The IJ asked government counsel for an alternative argument, and counsel argued that "[Petitioner] also is not eligible for asylum. She's subject to the Asylum Cooperative Agreement with Ecuador, which [the government] will be filing to preclude asylum. She may be married, but any I-130 would be speculative, adjustment of status would be speculative, especially with her recent arrest history." Id. at 6:2-8. After some discussion, the IJ denied bond, "because I don't have jurisdiction." Id. at 9:2-3. The IJ continued: "In the alternative, I'm going to make a finding that you're a risk of flight because you have limited forms of immigration relief." Id. at 9:3-4. The IJ then advised Petitioner of her right to appeal. See id. at 9:4-6. Petitioner requested the opportunity to speak; the IJ denied her request and concluded the hearing. See id. at 9:7-12.

The IJ's written ruling reflected that Petitioner's request was denied "because Mandatory Detention due to Laken Riley Act. Alternative ruling is that [Petitioner] poses a risk of flight." Id., Ex. H. Petitioner reserved appeal, with an appeal deadline of March 12, 2026. See id. There is no indication in the record that Petitioner appealed the IJ's bond denial to the Board of Immigration Appeals ("BIA").

**F. Subsequent Proceedings**

Petitioner alleges that on February 24, 2026, an ICE deportation officer at Adelanto personally served her with the court-ordered Class Action Notice in Maldonado Bautista v. Santacruz. See Petition ¶ 40; id., Ex. L.

On April 22, 2026, after approximately six months in detention, Petitioner appeared for another proceeding, at which her counsel voluntarily withdrew her request. See Answer, Ex. I ("Rodriguez v. Robbins Bond is

Withdrawn”). The IJ denied counsel’s motion to continue the bond hearing. See id.

On June 18, 2026, approximately eight months into her detention, Petitioner was ordered removed by an IJ; she has a pending appeal with the BIA. See Petition, Exs. D-E. Petitioner remains detained at the Adelanto ICE Processing Center. See id. ¶ 14; see also https://locator.ice.gov/odls/#/search (search First Name: “Kathia,” Last Name: “Rugama Perez,” Country of Birth: “Nicaragua”) (last accessed September 28, 2026).

Petitioner alleges that she kept asking, and wrote by hand to the IJ in May 2026, “pleading for her liberty ‘under any condition that you suggest.’” See Petition ¶ 41; id., Ex. M. Petitioner alleges that in or about May or June 2026, she again sought custody redetermination, and her request was again denied. See id. ¶ 41. Petitioner states that the order memorializing that second denial has been requested from the Immigration Court’s records system and will be lodged with the Court upon receipt. See id. There are no custody redetermination orders beyond the April 22, 2026 order in the record.

Petitioner has now been detained for approximately three weeks shy of a year. Petitioner alleges that the cost of her detention has not been abstract: in February 2026, her 12-year-old nephew—whose cancer treatment she had been financially supporting—died. See Petition ¶ 42. Attached to the Petition is handwritten letter dated July 30, 2026, wherein Petitioner expresses, inter alia, that she is “extremely desperate,” “urgently begging for HELP,” “imprisoned in an unescapable maze with no justice,” and “falling into an extreme depression”; that she “wish[es] nothing more than to communicate with [her] family without limitations, get back to working and having productive once again”; and that being in detention “makes [her] feel like a vegetable, wasting

[her] month away." See id., Ex. N.[5] Petitioner's handwritten letters also describe the financial hardship associated with her detention. See id., Exs. I, N.

## III. DISCUSSION

A federal court may grant a writ of habeas corpus to a petitioner "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas jurisdiction extends to noncitizens challenging the lawfulness of their immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001).

### A. Exhaustion

A noncitizen habeas petitioner ordinarily must exhaust available administrative remedies before challenging immigration detention under § 2241. See Leonardo v. Crawford, 646 F.3d 1157, 1160 (9th Cir. 2011). When a petitioner does not exhaust, "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." Id. The exhaustion requirement is prudential and subject to waiver. See Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004).

Petitioner argues that exhaustion is not required and, in any event, would be futile. See Petition ¶¶ 20-25. Respondents have not argued that the Court should dismiss the Petition for failure to exhaust. On this record and given Respondents' failure to raise the issue, the Court declines to dismiss the Petition for failure to exhaust. See Laing, 370 F.3d at 1000; see also Puga v.

[5] The letter, which is dated July 30, 2026, states: "its been more than a month since I've turned in another federal motion (HABEAS CORPUS) and still currently waiting on a response." See Petition, Ex. N. The Court is unaware of any of Petitioner's habeas petitions besides the Prior Petition, filed on December 12, 2025, and the instant Petition, filed on September 4, 2026.

Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (explaining when prudential exhaustion may be required).

**B. Petitioner's February 10, 2026 Bond Hearing**

This Court's jurisdiction to review the IJ's February 10, 2026 bond decision is limited by 8 U.S.C. § 1226(e), which provides that any "discretionary judgment regarding the application of [8 U.S.C. § 1226]," which includes release from immigration detention on bond pursuant to § 1226(a), "shall not be subject to review." 8 U.S.C. § 1226(e). Further, "[n]o court may set aside any action or decision . . . under [8 U.S.C. § 1226] regarding the detention of any alien or the revocation or denial of bond or parole." Id.

The Ninth Circuit has acknowledged that "[a]lthough § 1226(e) restricts jurisdiction in the federal courts in some respects, it does not limit habeas jurisdiction over constitutional claims or questions of law." Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011). Under Ninth Circuit precedent, a noncitizen's dangerousness or risk of flight is a mixed question of law and fact that may be reviewed for an abuse of discretion. See Martinez v. Clark, 124 F.4th 775, 783-84 (9th Cir. 2024); see also Gonzalez v. Reyes v. Rios, No. 26-03830, 2026 WL 2190830, at *3 n.1 (C.D. Cal. July 28, 2026) ("Although Martinez involved a dangerous determination, the same rationale applies to detention decisions based on flight risk."). Under abuse of discretion review, the Court does not reweigh evidence, but instead determines whether the IJ "applied the correct legal standard." Martinez, 124 F. 4th at 785. Absent "red flags"—such as the IJ or BIA misstating the record or failing to mention highly probative or potentially dispositive evidence—a reviewing court takes the IJ or BIA "at its word" that it considered the evidence and applied the correct standard. Id. (quotation marks omitted).

### 1. The Immigration Judge's Mandatory Detention Determination

As the government did before the IJ, Respondents contend that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(E) because she was arrested in September 2025 for possessing a stolen vehicle. See Answer at 5. The Court disagrees.[6]

The Laken Riley Act amended § 1226(c) to require detention of certain inadmissible noncitizens who are "charged with, [are] arrested for, [are] convicted of, admit[] having committed, or admit[] committing acts which constitute the essential elements of" specified offenses, including "burglary, theft, larceny, [and] shoplifting." 8 U.S.C. § 1226(c)(1)(E)(ii). Congress further provided that those enumerated offenses "have the meanings given such terms in the jurisdiction in which the acts occurred." Id. § 1226(c)(2). Thus, it is not enough that Respondents characterize Petitioner's alleged conduct as involving theft. The offense attributed to Petitioner must qualify as one of the enumerated offenses under California law.

Contrary to the government's argument before the IJ, it does not. The GGPD records identify California Penal Code § 496d(a), which criminalizes receiving a stolen motor vehicle, as the offense attributed to Petitioner. See Answer, Ex. C at 3-6. The report separately identifies a Vehicle Code § 10851(a) offense as to the driver. See id. Petitioner was released the same day, and no criminal charge was ultimately filed against her. See id. at 8-9.

---

[6] The government's decision to argue mandatory detention before the IJ was, to say the least, strange. It had, as already noted, not bothered to oppose the petition (or even appear) in Rugama Perez I. Had it done so, and argued that Petitioner was subject to mandatory detention under the Laken Riley Act, the Court could have resolved that issue in Rugama Perez I. Instead, the government waited until the hearing before the IJ, then argued mandatory detention for the first time.

California law distinguishes receipt of stolen property from theft. In People v. Orozco, 9 Cal. 5th 111 (2020), the California Supreme Court addressed § 496d(a) specifically and rejected the proposition that receiving a stolen vehicle is itself a theft offense. The court explained that California defines theft as a "taking with intent to steal the property," whereas "[t]he elements of receipt of stolen property . . . do not require the defendant to have engaged in any such taking." Id. at 121-22. The distinction is substantive: because a person who steals property cannot also be convicted of receiving that same property, the California Supreme Court observed that "it is difficult to understand how receiving stolen property could amount to theft." Id. at 122.

That distinction is dispositive here because Congress expressly incorporated the law of the jurisdiction where the acts occurred. See 8 U.S.C. § 1226(c)(2). Petitioner's alleged § 496d(a) offense is not "theft" or "larceny" under California law, nor does Respondents' evidence identify an arrest of Petitioner for burglary or shoplifting. The reported facts also do not establish that Petitioner admitted committing the essential elements of one of those offenses. Although the police report states that Petitioner knew the vehicle's owner had requested its return, it also records her explanation concerning her understanding of the vehicle's ownership. See Answer, Ex. C at 8-9. Nothing identified by Respondents amounts to an admission that Petitioner herself took the vehicle with the intent required for theft under California law.

The Court's conclusion accords with Valdiosera Godinez v. Mullin, No. 26-04090, 2026 WL 2161339 (S.D. Cal. July 27, 2026). There, applying § 1226(c)(2) and Orozco, the court held that an arrest and charge for receiving stolen property under California Penal Code § 496(a) did not qualify as an enumerated Laken Riley Act offense because receipt of stolen property lacks the taking required for theft or larceny. See id. at *1-2. Section 496d(a) presents the same distinction, and Orozco itself concerns that vehicle-specific statute.

Respondents therefore have not established that the September 4, 2025 incident satisfies § 1226(c)(1)(E)(ii) on the grounds of the purportedly qualifying offense.

Additionally, Petitioner argues that her release under California Penal Code § 849(b)(1), and the resulting Certificate of Release stating that the incident "was a detention only, not an arrest," preclude application of the statute's "is arrested for" language. The Court agrees.

Section 1226(c)(1)(E)(ii) requires, in relevant part, that the noncitizen "is arrested for" a qualifying offense. California law provides that when a person is released under Penal Code § 849(b)(1) and no accusatory pleading is filed, the arrest "shall not be deemed an arrest, but a detention only." Cal. Penal Code §§ 849(c), 849.5. Section 851.6 requires California to issue a certificate identifying the incident as a detention and to delete references to an arrest from its criminal records. Thus, under the law governing the incident, the person is not an individual who "is arrested for" the offense. At most, the person was previously detained. The Laken Riley Act's present-tense language does not encompass a historical arrest that California law has subsequently converted into a detention. Other district courts have adopted precisely this construction, noting the "serious constitutional concerns" that would be otherwise presented. See Brandon Y.M. v. Andrews, No. 25-01962, 2026 WL 125234, at *3 (E.D. Cal. Jan. 16, 2026) ("being 'detained' or 'cited' for a crime is insufficient under the [Laken Riley Act]"); Tutka v. Noem, No. 26-00706, 2026 WL 743354, at *3 n.2 (E.D. Cal. Mar. 17, 2026) (same).

Receiving stolen property is not a theft offense under California law. And a petitioner with a certificate of release that states under California law that an encounter with police was a detention rather than arrest does not meet the "is arrested for" language of § 1226(c)(1)(E). For both reasons, the IJ's conclusion that he lacked jurisdiction to consider Petitioner's request for bond

was legally erroneous, as Petitioner is not subject to mandatory detention as a matter of law under § 1226(c)(1)(E) based on her September 4, 2025 detention for the charge of California Penal Code § 496d(a), for which Petitioner was issued a certificate of release under California Penal Code § 849(b)(1).

**2. The Immigration Judge's Flight Risk Determination**

When determining whether a noncitizen is a danger to the community or risk of flight, an IJ normally weighs nine factors, pursuant to BIA precedent. See In re Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006); see also Martinez, 124 F.4th at 783. The nine factors that an IJ "may" consider include:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

Martinez, 124 F.4th at 783 (citing In re Guerra, 24 I. & N. Dec. at 40). IJs have "broad discretion to weigh the listed factors and add any factors not mentioned or discount those that are less probative." See id. at 784.

During Petitioner's bond hearing, the sole argument government counsel raised regarding Petitioner's "flight risk" was the alleged speculative nature of her immigration relief, "especially with her recent arrest history." See Hearing Tr. at 6. The sole reason the IJ stated for finding Petitioner to be a risk of flight was her "limited forms of immigration relief." Id. at 9:3-4.

On this record, "there is an indication that something is amiss." Martinez, 124 F.4th at 785. For one, the IJ only made the alternative "flight risk" ruling on government counsel's request, raised out of concern that this

Court would "take issue with us not doing it under 236(a)." Hearing Tr. at 5:23-25. Moreover, as discussed, Petitioner's "recent arrest history" referenced by the government in connection with the alleged speculative nature of her immigration relief does not involve an arrest, but rather a detention under California law. See Cal. Penal Code §§ 849(c), 849.5. To the extent the IJ relied on the September 4, 2025 "arrest" in finding Petitioner to be a flight risk, this was legal error given Petitioner was not "arrested" under California law. See id.

Further, the IJ failed to meaningfully discuss the Guerra factors in evaluating whether Petitioner is a flight risk. At most, the IJ only discussed part of the third Guerra factor regarding Petitioner's family ties in the United States and whether they may entitle her to reside permanently in the United States. See Hearing Tr. at 6, 9. The IJ asked government counsel if Petitioner would be able to adjust status if her United States citizen spouse filed an I-130; government counsel responded in the negative. See id. at 6:13-17. The IJ ultimately found Petitioner to be a flight risk "because [she] [has] limited forms of immigration relief." See id. While it "might be rational" to conclude that a noncitizen who faces inevitable removal may be less likely to appear at future removal hearings, "the IJ did not explain how the relative strengths or weaknesses of Petitioner's claims for relief outweighed the specific circumstances presented in [her] case." Soriano v. Hernandez, 830 F. Supp. 3d 1071, 1081 (W.D. Wash. 2026).

At the outset of the bond hearing, Petitioner's counsel highlighted her spotless attendance record, her United States citizen husband and sponsor, her employment history, and the circumstances of the September 4, 2025 incident, including the lack of a formal arrest or filed charges. See Hearing Tr. at 3-4. The IJ did not acknowledge Petitioner's arguments or evidence, either orally or in the written order. See id.; id., Ex. H. To be sure, the IJ was not required to

discuss each piece of evidence submitted. See Martinez, 124 F.4th at 785. However, here, as in Soriano, "[t]he IJ provided no rationale why it should be concluded that under these circumstances Petitioner would try to flee rather than appear in immigration court to pursue claims for relief from removal proceedings, even if such claims were considered weak." 830 F. Supp. 3d at 1081. And given the "red flags," the Court need not credit the IJ's use of a "catchall phrase" regarding the "full consideration of the evidence presented." See id., Ex. H. On this record, the Court concludes that the IJ abused his discretion in finding Petitioner to be a flight risk.

**C. Remedy**

Petitioner was detained at an ICE check-in conducted over a month after the GGPD incident. She has no criminal charges or convictions, an undisputedly perfect attendance record at her immigration appointments, and has lived in the United States for over four years, with years of work authorization past and remaining. On this record, the Court finds it appropriate to order Petitioner's release. As discussed, this is the second time Petitioner has come to federal court to vindicate her rights. Additionally, based on the Government's prior issuance of a Form I-220A OREC; Petitioner's attendance record over a matter of years; her fixed residence; her profession and work authorization; and her lack of criminal charges or convictions, "the Court finds no basis for Petitioner's continued detention and concludes immediate release with reasonable conditions of supervision is the appropriate remedy." Soriano, 830 F. Supp. 3d at 1081.

In addition to ordering Petitioner's release on her previously applicable conditions, the Court will also enter a modified version of Petitioner's requested prospective, permanent injunction enjoining her re-detention based on the September 4, 2025 incident. See Petition at 21. The injunction, as set forth below, is directly related to the unlawful acts at issue in this action and

narrowly tailored to remedy the specific harm alleged, namely, Petitioner's unlawful detention under § 1226(c)(1)(E) based on the September 4, 2025 incident. See N.L.R.B. v. Express Pub. Co., 312 U.S. 426, 435-37 (1941); E. Bay Sanctuary Covenant v. Barr, 934 F.3d 1026, 1029 (9th Cir. 2019).

## IV. ORDER

For the foregoing reasons, IT IS ORDERED that:

1. The Petition (Dkt. 1) is **GRANTED**.

2. Respondents shall immediately release Petitioner Kathia Belen Rugama Perez (A# 240-770-478) from custody on the conditions in place prior to her October 15, 2025 re-detention. Concurrently upon her release, Respondents shall return to Petitioner her personal identity documents and other property taken from her upon her October 15, 2025 re-detention, including her Employment Authorization Document, California identification card, and Social Security card. Within three (3) days, Respondents shall file a status report confirming compliance.

3. Respondents are enjoined from detaining Petitioner under 8 U.S.C. § 1226(c)(1)(E)(ii) solely on the basis of the September 4, 2025 GGPD incident described herein, absent a material change in circumstances that would make such detention lawful.

4. Any application for fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, shall be filed in accordance with that statute.

5. Petitioner's remaining requests are **DENIED**.

IT IS FURTHER ORDERED that Judgment be entered accordingly.

Date: September 29, 2026

DOUGLAS F. McCORMICK
United States Magistrate Judge